Rachel E. Kaufman (CSB# 259353)
rachel@kaufmanpa.com
KAUFMAN P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881

Attorney for Plaintiff and all others similarly situated

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

ANDREW PETTIS, individually, JOHN WYSKIDA, individually, and on behalf of all others similarly situated,

    Plaintiffs,

v.

HEALTH IQ INSURANCE SERVICES, INC., a Delaware corporation,

    Defendant.

NO.

**CLASS ACTION COMPLAINT**

**JURY DEMAND**

Plaintiff Andrew Pettis ( "Pettis") and Plaintiff John Wyskida ("Wyskida") bring this Class Action Complaint and Demand for Jury Trial against Defendant Health IQ Insurance Services, Inc. ("Defendant" or "Health IQ") to stop the Defendant from violating the Telephone Consumer Protection Act by making pre-recorded telemarketing calls, and by placing multiple calls to consumer phone numbers that are registered on the National Do Not Call registry ("DNC"). Plaintiff Pettis and Plaintiff Wyskida also seek injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiffs Pettis and Wyskida, for this Complaint, allege as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

## PARTIES

1. Plaintiff Andrew Pettis is a resident of Malad City, Idaho.

2. Plaintiff John Wyskida is a resident of Cortlandt Manor, New York.

3. Defendant Health IQ is a Delaware registered corporation headquartered in Mountain View, California. Defendant Health IQ conducts business throughout this District, California, and the U.S.

## JURISDICTION AND VENUE

4. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

5. This Court has personal jurisdiction over the Defendant and venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant has its head office in this District and the wrongful conduct giving rise to this case was directed from this District to the Plaintiffs.

## INTRODUCTION

6. As the Supreme Court explained at the end of its term this year, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

7. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

CLASS ACTION COMPLAINT
-2-

8. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

9. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

10. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

11. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

12. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

13. According to online robocall tracking service "YouMail," 3.3 billion robocalls were placed in June 2020 alone, at a rate of 111.2 million per day. www.robocallindex.com.

14. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

15. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

16. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls

Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## COMMON ALLEGATIONS

17. Health IQ sells insurance packages to consumers including Medicare, Life and Disability insurance.

18. As part of its business practice, Health IQ places solicitation calls to consumers to sell its insurance packages.

19. Pre-recorded solicitation telemarketing calls are being placed to consumers either by Health IQ directly, or by a third-party telemarketer on behalf of Health IQ.

20. These calls are being placed without express written consent to consumers who are registered on the DNC and who do not have an existing business relationship with Defendant.

21. For example, in Plaintiff Pettis' case, Defendant or a telemarketer working on its behalf placed multiple solicitation calls to his number that is registered on the national do not call registry without his consent.

22. Plaintiff Wyskida received an unsolicited, pre-recorded solicitation call to his cell phone number.

23. In response to these calls, Plaintiffs Pettis and Wyskida file this lawsuit seeking injunctive relief requiring the Defendant to cease from violating the Telephone Consumer Protection Act, as well as an award of statutory damages to the members of the Classes and costs.

---

[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf

CLASS ACTION COMPLAINT
-4-

**HEALTH IQ OR ITS THIRD-PARTY TELEMARKETERS PLACE UNSOLICITED PRE-RECORDED SALES CALLS TO CONSUMERS, INCLUDING MULTIPLE CALLS TO PHONE NUMBERS REGISTERED ON THE DNC**

24. The dialer systems that Health IQ use in their call centers include the option to place pre-recorded calls to consumers.

25. In the job posting for a Director, Call Center & Dialer Operations, Health IQ shows that it uses the outgoing automatic dialer: Five9 and Genesys:

> **What we are looking for:**
> - Bachelor's Degree in Management, Marketing, or Sales, or equivalent preferred.
> - 4+ years experience and a proven track record of Sales Operations experience; Insurance experience a plus!
> - Experience with either Five9, inContact, Genesys or similar contact center software vendors [3]

26. Five9, referenced in the job posting above, provides the option to leave pre-recorded voicemails if a consumer does not answer the call:

> **Turn your Contact Center into a Money Maker**
>
> Outbound call centers are designed to reach out to customers or prospects to provide information on a new product or service, follow up on recent purchase, or remind your customers of an upcoming appointment. With an outbound contact center, it is vitally important that agents are not spending time dialing the phone only to get an unanswered call, a hang up or voicemail. This decreases productivity and increases costs.
>
> Five9 automated dialing solutions offer you a range of customizable dialing modes to align with your outbound contact center needs. Advanced dialer algorithms predict when an agent will become available and adjust call rates to ensure a new call is waiting for them. Agents don't waste time dialing and waiting. The dialers automatically screen out unanswered calls, hang-ups, and leave voicemails. Agents spend more time interacting with customers and prospects – increasing productivity and revenue.
>
> Five9 offers **inbound**, **outbound** and **blended** contact center offerings, enabling your company to choose the right solution to meet your business requirements. [4]

---

[3] https://www.linkedin.com/jobs/view/director-call-center-dialer-operations-at-health-iq-1928159333
[4] https://www.five9.com/products/outbound-contact-center

CLASS ACTION COMPLAINT
-5-

27. Relevant to Plaintiff Wyskida's experience, Five9 gives call centers the ability to do a voice message broadcast, which plays a pre-recorded voice message when a call is answered:

### Five9 Automatic Dialer Capabilities

For any contact center business to succeed in today's competitive marketplace, customer service is of utmost importance. Contact centers are constantly looking for ways to improve customer interaction, create outbound campaigns, or want a call center on-demand.

In such a scenario, automatic dialers or voice message broadcasting is for you. This increases the rate of customer reach out, without hiring more people. Partner with Five9.

Five9's Automatic Dialer helps to create outbound campaigns to deliver automated voice messages. Our Automatic dialer offers predictive dialers, power dialers, and preview dialer capability that enables contact centers to improve their call handling efficiency. Using Five9's automatic dialer, you can:[5]

28. The aforementioned job posting also makes reference to Genesys, a call center software provider that is similar to Five9 that offers the ability to make pre-recorded calls.[6]

29. As explained by the Federal Communications Commission ("FCC") in its 2012 order, the TCPA requires "*prior express written consent* for all autodialed or prerecorded [solicitation] calls to wireless numbers and residential lines." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG No. 02-278, FCC 12-21, 27 FCC Rcd. 1830 ¶ 2 (Feb. 15, 2012).

30. Yet in violation of this rule, Defendant or its third-party telemarketers fail to obtain any express written consent prior to placing pre-recorded solicitation calls to telephone numbers such as those of Plaintiff Wyskida.

---

[5] https://www.five9.com/connect/automatic-dialer
[6] https://www.genesys.com/capabilities/outbound

31. To make matters worse, Defendant or its third-party telemarketers place multiple, unsolicited telemarketing calls to consumers who have their phone numbers registered on the DNC.

32. There are numerous complaints posted online regarding unsolicited calls, including pre-recorded calls that consumers have received from, or on behalf of Health IQ including:

- "CID: HiQ Medicare, but they can't be calling Direct because it's a "ROBO" Caller! This is a Verified "ROBO/SCAM/FRAUD" Caller, by 4 sources! BEWARE!!!"[7]

- "Recording"[8]

- "I didn't let her finish her sentence and hung up. will block."[9] (consumer marked the call as Robocall.)

- "They said that it was Medicare insurance That i was looking for information about rates not true"[10]

- "This number is harassing me. Calls several times in a row almost daily. Answer it and you will hear a voice that says 'Hi, I'm XYZ on a recorded call and says I signed up for a medicare plan, or similar. Sometimes just hangs up. I have blocked. Gets by block."[11]

- "Unsolicited call"[12]

- "Said I signed up for a medical supplement on Medicare. I NEVER did that. Keeps using other numbers. Calls almost daily and multiple times a day."[13]

- "Dropped call or no message"[14]

---

[7] https://lookup.robokiller.com/p/800-927-8452
[8] *Id.*
[9] https://www.telguarder.com/us/number/8009278452
[10] https://findwhocallsyou.com/8009278452?CallerInfo
[11] https://www.shouldianswer.com/phone-number/8009278452
[12] *Id.*
[13] *Id.*
[14] https://reverd.com/blog/1-855-913-0760

CLASS ACTION COMPLAINT
-7-

- "unsolicited advertising"[15]

33.     In fact, NoMoRobo.com captured a call that a consumer received from Defendant using phone number 800-927-8452 that began with a pre-recorded message, similar to the call Plaintiff Wyskida received from 800-927-8452[16]

34.     Upset consumers have addressed unsolicited telemarketing calls they received directly to Health IQ through its BBB page. These complaints include:

- "This. Company. Will. Not. Stop. Calling. Me. I have repeatedly asked to be taken off the call list, and at this point, further contact is harassment. This. Company. Will. Not. Stop. Calling. Me. I regret, from the day I expressed interest on a FB post, ever having contacted this company. At first I spoke to a rep, then realized the products and services weren't for me. I got a callback a few months later, presumably for purposes of retention. That doesn't bother me. But now I am getting a call just about every week from these guys. I've asked half a dozen times to be taken off the contact list. I keep getting calls. This last time (this morning), I finally broke down and told the phone rep that if I got ONE MORE CALL from them, I would contact the FTC and my state's Attorney General's office… But honestly, I feel harassed."[17]

- "I don't know how I got onto their 'call list', but I receive at least one call each day soliciting me for life insurance. I've told them that I have plenty of insurance, don't need more and politely ask that I be taken off their list (put on "Do Not Call" list). To no avail. This has continued for the last 6 months. Horrible company!"[18]

- "This company is boiler room telemarketing. They have called me every day, at least once if not twice a day, non stop texting, for six months! I have told them repeatedly that I am not interested, please delete my contact information. No use. They will not stop. Real companies do not operate this way. What makes them think that making people angry is a valid sales approach? You could not pay me to be insured through Health IQ because of the way they have harrassed me."[19]

- "They won't stop hounding you on the phone. For months and months. They call and call even when you ask them to take your number off from their list. They

---

[15] *Id.*
[16] https://www.nomorobo.com/lookup/800-927-8452
[17] https://www.bbb.org/us/ca/mountain-view/profile/life-insurance/health-iq-insurance-services-inc-1216-642075/complaints
[18] https://www.bbb.org/us/ca/mountain-view/profile/life-insurance/health-iq-insurance-services-inc-1216-642075/customer-reviews
[19] *Id.*

CLASS ACTION COMPLAINT
-8-

- won't. They continue hounding and harassing you with unsolicited phone calls. Truly the biggest irritants on the planet."[20]

- "Before I explain what happened I want to be clear I've never heard of this company and I did not request life insurance from anywhere. Over the last couple months I've received spam phone calls from an agent from this company..."[21]

## PLAINTIFF PETTIS'S ALLEGATIONS

35. Plaintiff Pettis registered his phone number on the DNC on June 29, 2003.

36. Plaintiff Pettis's phone number is not associated with a business and is used for personal use only.

37. On September 30, 2020, Plaintiff Pettis received a call to his phone from Defendant Health IQ using phone number 855-913-0760.

38. Plaintiff Pettis answered the call, but there was dead silence until the call abruptly ended.

39. Based on an investigation conducted by Plaintiff Pettis' attorneys, when 855-913-0760 is called, an automated system identifies the company as being Health IQ.

40. On the following dates, Plaintiff Pettis received a series of calls to his phone from Defendant Health IQ using phone number 503-683-8313:

- October 28, 2020 at 10:44 AM
- October 28, 2020 at 2:31 PM
- October 29, 2020 at 2:38 PM
- October 30, 2020 at 10:43 AM
- October 30, 2020 at 2:44 PM

41. None of the above calls were answered.

42. On November 2, 2020 at 11:21 AM, Plaintiff Pettis received another call from Defendant Health IQ using phone number 503-683-8313 to his phone.

---

[20] *Id.*
[21] *Id.*

43. Plaintiff Pettis answered the call and an agent identified the company as Health IQ.

44. The agent was calling to solicit Plaintiff Pettis with a quote for an insurance product.

45. Plaintiff Pettis told the agent that he was not interested and asked for his phone number to be removed from Health IQ's calling list.

46. Based on an investigation conducted by Plaintiff Pettis' attorneys, when 503-683-8313 is called, an automated system identifies the company as being Health IQ.

## PLAINTIFF WYSKIDA'S ALLEGATIONS

47. Plaintiff Wyskida registered his cell phone on the DNC on August 15, 2003.

48. Plaintiff Wyskida's phone number is not associated with a business and is used for personal use only.

49. On October 28, 2020, Plaintiff Wyskida received a pre-recorded call to his cell phone from Defendant Health IQ using phone number 800-927-8452.

50. When Plaintiff Wyskida answered the phone, there was a prerecorded message playing before a live agent quickly came on the line a few seconds later.

51. The agent identified the company name as Health IQ and said she was calling to offer Plaintiff Wyskida a Medicare Plan B supplemental insurance quote.

52. Plaintiff Wyskida told the agent to remove his phone number from Health IQ's calling list.

53. Neither Plaintiff Wyskida or anyone in his immediate family are on Medicare or Medicaid.

54. Based on an investigation conducted by Plaintiff Wyskida's attorneys, when 800-927-8452 is called, an automated system identifies the company as being Health IQ.

55. The unauthorized solicitation telephone calls that Plaintiff Pettis and Plaintiff Wyskida received from or on behalf of Health IQ, as alleged herein, have harmed both Plaintiff's

CLASS ACTION COMPLAINT
-10-

in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of their cell phones, in addition to the wear and tear on the phones' hardware (including the phones' battery) and the consumption of memory on the phones.

56. Seeking redress for these injuries, Plaintiff Pettis and Plaintiff Wyskida, on behalf of themselves and Classes of similarly situated individuals, bring suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits unsolicited pre-recorded telemarketing calls and telemarketing calls to telephone numbers that are registered on the DNC.

## CLASS ALLEGATIONS

57. Plaintiff Pettis and Plaintiff Wyskida bring this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seek certification of the following Classes:

> **Pre-recorded No Consent Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant (or an agent acting on behalf of Defendant) called (2) using a pre-recorded voice message, (3) for substantially the same reason Defendant called Plaintiff Wyskida, and (4) for whom the Defendant claims it obtained the person's number the same way it obtained Plaintiff Wyskida's number.
>
> **Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant (or an agent acting on behalf of the Defendant) called more than one time, (2) within any 12-month period, (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendant called Plaintiff Pettis, and (5) for whom the Defendant claims it obtained the person's number the same way it obtained Plaintiff Pettis's number.

58. The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, their subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiffs' attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded

persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released. Plaintiff Pettis and Plaintiff Wyskida anticipate the need to amend the Class definitions following appropriate discovery.

59. **Numerosity**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impractical.

60. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff's and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a) whether Defendant Health IQ or its agents placed pre-recorded voice message calls to Plaintiff Wyskida and members of the Pre-recorded Class without first obtaining consent to make the calls;

(b) whether Defendant Health IQ or its agents systematically made multiple calls to Plaintiff Pettis and other consumers whose telephone numbers were registered with the DNC without first obtaining consent to make the calls;

(c) whether Defendant Health IQ's calls to Plaintiff Pettis, Plaintiff Wyskida and other consumers were made for telemarketing purposes;

(d) whether Defendant's conduct constitutes a violation of the TCPA;

(e) whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

61. **Adequate Representation**: Plaintiffs Pettis and Wyskida will fairly and adequately represent and protect the interests of the Classes, and have retained counsel competent and experienced in class actions. Plaintiff Pettis and Plaintiff Wyskida have no interests antagonistic to those of the Classes, and Defendant has no defenses unique to either Plaintiff. Plaintiff Pettis, Plaintiff Wyskida and their counsel are committed to vigorously

prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff nor their counsel have any interest adverse to the Classes.

62. **Appropriateness**: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiffs' challenge of those practices hinges on Defendant's conduct with respect to the Classes as wholes, not on facts or law applicable only to Plaintiff Pettis and/or Plaintiff Wyskida. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**FIRST CLAIM FOR RELIEF**
Telephone Consumer Protection Act
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Wyskida and the Pre-recorded No Consent Class)**

63. Plaintiff Wyskida repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

64. Defendant and/or its agents transmitted unwanted solicitation telephone calls to Plaintiff Wyskida and the other members of the Pre-recorded No Consent Class using a pre-recorded voice message.

65. These pre-recorded voice calls were made *en masse* without the prior express written consent of the Plaintiff Wyskida and the other members of the Pre-recorded No Consent Class.

66. Defendant has, therefore, violated 47 U.S.C. §§ 227(b)(1)(A)(iii), (b)(1)(B). As a result of Defendant's conduct, Plaintiff Wyskida and the other members of the Pre-recorded No Consent Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

**SECOND CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Pettis and the Do Not Registry Class)**

67. Plaintiff Pettis repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

68. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

69. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.  47 U.S.C. § 227(c).

70. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff Pettis and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

71. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff Pettis and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200, as described above.

72. As a result of Defendant's conduct as alleged herein, Plaintiff Pettis and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

73. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Pettis and Plaintiff Wyskida, individually and on behalf of the Classes, pray for the following relief:

74. An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiffs Pettis and Wyskida as the representatives of the Classes; and appointing their attorneys as Class Counsel;

75. An award of actual and/or statutory damages and costs;

76. An order declaring that Defendant's actions, as set out above, violate the TCPA;

77. An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Classes; and

78. Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs Pettis and Wyskida request a jury trial.

Respectfully Submitted,

Dated: November 20, 2020

By: /s/ *Rachel E. Kaufman*
Rachel E. Kaufman
rachel@kaufmanpa.com
KAUFMAN P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881

*Attorney for Plaintiffs and the putative Class*

CLASS ACTION COMPLAINT
-15-